**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| KAREN LEE LAWSON, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>NANCY BERRYHILL, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 2:16-CV-498-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on November 29, 2016, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14], filed on May 16, 2017. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 23, 2017, the Commissioner filed a response, and on September 7, 2017, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Procedural Background**

On August 15, 2013, Plaintiff filed an application for benefits alleging that she became disabled on October 24, 2010. Plaintiff's application was denied initially and upon reconsideration. On April 7, 2015, Administrative Law Judge ("ALJ") William Leland held a hearing at which Plaintiff, with an attorney representative, and a vocational expert ("VE") testified. On April 15, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant met the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since October 24, 2010, the alleged onset date.

3. The claimant has the following severe impairments: obesity and diabetes mellitus with neuropathy.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c). She is able to lift and/or carry up to 50 pounds occasionally and 25 pounds frequently, stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday.

6. The claimant is able to perform past relevant work as a certified nursing assistant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability from October 24, 2010, through the date of the decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Factual Background

Plaintiff is obese, with a body mass index of up to 39.55, and suffers from diabetes mellitus with neuropathy. She has been diagnosed with hypercholesterolemia, hyperglycemia, hyperlipidemia, hypertension, hypothyrodism, and degenerative joint disease. She has been treated for numbness, weakness, and pain in her hands and legs, and discomfort in her joints.

Treating physician Dr. Feldner completed a medical source statement describing how

Plaintiff's impairments limit her ability to do work-related activities. He opined that her advanced degenerative joint disorder of knees and hips made her medically unable to sit, stand, or walk as required in a competitive work situation, that her pain would interfere with her attention and concentration 25% or more of the time, and that she is totally disabled, unable to work at all.

## III. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.. " *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence.. " *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*,

3

381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions.." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review.." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

**IV.     Analysis**

Plaintiff argues that the ALJ's assessment of Plaintiff's ability to work was not adequately supported and not based in the evidence of record. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

    A.     <u>Treatment</u>

The ALJ in this case discounted Plaintiff's testimony about her pain and limitations in part because of what he characterized as treatment that was "routine, conservative, and minimal in nature" since Plaintiff has not had to have surgery or "an excessive number of emergency room

4

visits," and because no doctor has prescribed ambulation aids. Plaintiff argues that the ALJ erred in second guessing Plaintiff's treatment and in relying on failure to seek treatment without asking her about that purported failure. The Commissioner argues that the ALJ was not required to question Plaintiff about her treatment since her attorney asked her about her treatment during the hearing.

When considering non-compliance with or failure to seek additional treatment as a factor in determining whether a claimant is impaired, an ALJ is required to make a determination about the claimant's reasons for the treatment she undertook and to develop the record accordingly. *See Thomas v. Colvin*, 826 F.3d. 953, 961 (7th Cir. 2016) ("[T]he ALJ concluded from [the plaintiff]'s gap in treatment between August 2011 and September 2012 that her symptoms were not as severe as she alleged, but, as noted, he did not explore her reasons for not seeking treatment, another error."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quotation omitted).

Plaintiff testified that she attempted to find a physician who would provide a second opinion and possibly additional treatment options, but that she was unable to obtain an appointment, and that she took the medications that had been prescribed by her doctor. She did not testify that she failed to participate in any treatment recommended by her physician, nor does the ALJ point to any records indicating her failure to comply with treatment. Instead, the ALJ uses that the fact that Plaintiff did not require "an excessive number of emergency room treatments" to conclude that Plaintiff's impairments do not limit her work-related activities as much as she claims. *See Goins v. Colvin*, 764 F.3d 677, 679–80 (7th Cir. 2014) (criticizing as" unsound" the dismissal of Plaintiff's testimony where ALJ "thought that at least [the plaintiff] might have been expected to visit a hospital

5

emergency room more frequently than she had done").

Similarly, rather than finding that Plaintiff's cane use to be consistent her allegations of pain and physical limitations, the ALJ uses the fact that no physician prescribed an ambulatory device as reason to *discount* her reported impairments. Not only do canes not require a prescription, but, as Plaintiff points out, her treating physician noted that she needs an assistive device in order to walk.. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription."). The regulations in effect at the time specifically reminded ALJs to take into account that, for example, "[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms." SSR 96-7p, 1996 WL 374186, at *8 (Jul. 2, 1996). Instead, the ALJ disbelieved Plaintiff's testimony regarding her limitations, failed to include Plaintiff's cane use in the RFC without explanation, and did not ask the VE how use of a cane might restrict available jobs. *See, e.g., Ross v. Barnhart*, 119 F. App'x 791, 795 (7th Cir. 2004) ("'The RFC is an assessment of what work-related activities the claimant can perform despite her limitations.' In considering a claimant's RFC, an ALJ is expected to take into consideration all relevant evidence, both medical and non-medical.") (quoting *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004)); 20 C.F.R. §§ 404.1545(a)(1), (a)(3); 416.1545(a)(1), (a)(3)).

B.    Medical Opinions

Plaintiff argues that the ALJ did not adequately explain how Plaintiff's limitations are taken into account in the RFC. She argues that the ALJ left an evidentiary gap in his opinion when he rejected all of the treating medical opinions and failed to explain how he determined which

6

limitations were supported. The Commissioner argues that the ALJ's opinion is supported by substantial evidence. In this case, the ALJ gave "little weight" the medical source statement of Plaintiff's treating physician which gave specific descriptions of Plaintiff's limitations and opined that she was unable to work.

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."). Because the ALJ failed to give controlling weight to Plaintiff's treating physician, he was required to analyze the following factors to describe what weight to give it: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision.").

In this case, the ALJ discounted the medical source statement completed by treating physician Dr. Feldner without identifying his specialty or the length and extent of the treating

7

relationship. Instead, the ALJ stated that the record contained no earlier physician statements regarding Plaintiff's functional limitations and that Dr. Feldner's records did not contain any imaging that supported his assessment of degenerative joint disease. The ALJ also gave "little weight" to the opinions of the state agency medical consultants. Although medical evidence, including that from a treating physician, "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions," *O'Connor-Spinner*, 627 F.3d at 618. In this case, the ALJ gave little weight to the medical statements that he included in his opinion, but does not indicate any evidence, other than Plaintiff's activities of daily living, that he relied upon in determining Plaintiff's RFC. Although it is appropriate for the ALJ to consider Plaintiff's daily activities, Plaintiff's activities of "independently maintaining her personal hygiene, preparing meals, gardening, doing laundry, shopping in stores, caring for pets, and driving," particularly given the limitations in those activities testified to by Plaintiff, are insufficient to support a finding that Plaintiff is able to walk for six out of eight hours and carry fifty pounds. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio*, 630 F.3d at 712 ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir.

8

2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding her daily activities" and methods of coping with pain); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

In short, the ALJ failed to build a logical bridge in this case. The Court is unable to follow the reasoning behind the ALJ's conclusion that the opinion of Plaintiff's treating physician is inconsistent with other medical evidence, despite not giving more than "little weight" to the opinion of *any* medical source in the record; a problem that is particularly concerning given the importance of treating physician opinions on issues of residual functional capacity. If the record contained insufficient medical information for the ALJ to reach a supported conclusion, he had a duty to obtain additional information. *See Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) ("[T]the ALJ has a duty to develop a full and fair record. Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence.").

C. <u>Combination of Impairments</u>

The Court is also concerned that the ALJ failed to consider the combination of Plaintiff's impairments. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the

9

combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). Although the ALJ stated generally that he considered Plaintiff's diabetes and obesity as they to each other and to Plaintiff's other body systems "as required by the Rulings," the opinion does not include any actual analysis of how Plaintiff's impairments, including those that may not be severe on their own, may interact to affect her ability to work. This is particularly concerning given Plaintiff's obesity, with a BMI of almost 40, and her reported difficulties standing, reaching, walking, and performing manipulation. "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC," *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)) (other citations omitted); *see also Martinez*, 630 F.3d at 698–99 ("The gravest error in an opinion with a number of contenders for that distinction is the failure to consider the bearing of [the plaintiff]'s extreme obesity. The administrative law judge mentioned in passing that it is a severe impairment but did not consider its significance in relation to [the plaintiff]'s knee. It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40."). In this case, the ALJ did not include any limitations on Plaintiff's ability to use her hands and found that she could stand and/or

walk for up to six hours in an eight-hour workday, despite noting medical records indicating numbness and weakness in her hands and arms, carpal tunnel syndrome, and degenerative joint disease.

On remand, the ALJ is directed to fully consider Plaintiff's testimony and the entirety of the record, including reports of assistive devices and adaptations to activities of daily living, address how the combination of Plaintiff's impairments limit her ability to perform work-related activities, and to fully explain how the evidence in the record supports his conclusions. The ALJ is reminded of his duty to develop a full record, including contacting medical sources or ordering additional medical examinations if necessary. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7thCir. 2009); *Barnett v. Barnhart*, 381 F.3d at 669.

**V. Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 8th day of February, 2018.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record